

Hughes Hubbard & Reed LLP
One Battery Park Plaza
New York, New York 10004-1482
Office:+1 (212) 837-6000
Fax: +1 (212) 422-4726
hugheshubbard.com

Marc A. Weinstein
Partner
Direct Dial: +1 (212) 837-6460
Direct Fax: +1 (212) 299-6460
marc.weinstein@hugheshubbard.com

November 18, 2025

**BY ECF AND EMAIL**

Honorable Naomi Reice Buchwald
United States District Judge
Southern District of New York
500 Pearl Street
New York, NY 10007

> Re:   *Skatteforvaltningen v. 470 South Ocean Boulevard Trust, et al.*,
>       No. 1:25-cv-01498-NRB; *Skatteforvaltningen v. McGee, et. al.*,
>       No. 1:25-cv-02281-NRB

Dear Judge Buchwald:

We write on behalf of plaintiff Skatteforvaltningen ("SKAT") with respect to the above-referenced cases, which were assigned to the Court as related to *Stein v. Skatteforvaltningen*, No. 1:23-cv-02508-NRB (S.D.N.Y.).  In both *Skatteforvaltningen v. 470 South Ocean Boulevard Trust, et al.* (the "Florida Case") and *Skatteforvaltningen v. McGee, et al.* (the "Long Island Case"), SKAT asserts, among other things, fraudulent transfer claims against either Luke McGee or entities he has an interest in, which claims derive from McGee's breach of the Maple Point settlement agreement at issue in *Stein*.  In light of the Court's September 22, 2025 Opinion and Order and the October 9, 2025 Judgment entered in *Stein*,[1] we write to provide background on the Florida and Long Island Cases and to propose a framework for moving forward with each action.

*The Florida Case*

On July 9, 2024, SKAT commenced the Florida Case in the United States District Court for the Southern District of Florida (the "Florida Court").  (ECF No. 1.)  The Florida Case concerns McGee's transfer of approximately $30 million into a trust for the purpose of

---

[1]   The 30-day automatic stay on execution and proceedings to enforce the *Stein* judgment has now expired.

purchasing an 8,804 square foot, oceanfront townhouse located in Palm Beach, Florida for McGee's benefit.[2]  Through its claims, SKAT seeks to unwind the trust transfer, which occurred leading up to McGee's breach of the Maple Point settlement agreement and which McGee intended as a means of frustrating SKAT's judgment collection efforts by taking advantage of Florida's homestead exemption.  SKAT contends that the Florida homestead exemption does not protect McGee's mansion, which his trust purchased with the proceeds from "fraud or egregious conduct,"[3] including McGee's fraudulent transfer of the funds to the trust and his fraud related to AdaptHealth Corp., a publicly traded company.[4]

On September 20, 2024, while the case was still pending in the Southern District of Florida, defendants filed a motion to dismiss SKAT's claims based on, *inter alia*, Florida's homestead exemption and improper venue due to the Maple Point settlement agreement's forum selection clause.  (ECF No. 19.)  While that motion remained pending, on December 30, 2024, defendants filed a premature motion for partial summary judgment (before SKAT had any meaningful opportunity to obtain discoverable information), again arguing that Florida's homestead exemption shields McGee's mansion from SKAT's enforcement efforts.  (ECF No. 40.)  On February 21, 2025, the Florida Court granted defendants' motion to dismiss solely on venue grounds, denied all pending motions as moot, and ordered that the case be transferred to this Court.  (ECF No. 74.)  Thus, the homestead exemption issue at the heart of the Florida Case remains unresolved.

Although discovery commenced in the Florida Case, it did not proceed very far prior to the transfer order.  Defendants resisted SKAT's efforts to obtain relevant discovery concerning, among other things, the trust's purchase of McGee's mansion, the source of the funds used to purchase the mansion, and McGee's various frauds.  Defendants filed two motions for protective orders and forced SKAT to file a motion to compel, leading to two separate rulings in which the Florida Court denied one of defendants' motions[5] and ordered that the discovery SKAT sought be produced.  (ECF Nos. 52, 73.)  SKAT contends that notwithstanding the transfer to this Court, the Florida Court's discovery rulings remain in effect.

With respect to next steps, although SKAT could theoretically pursue McGee's Florida mansion by way of judgment enforcement in *Stein*, we propose maintaining a separate docket for the Florida Case.  Doing so keeps separate from SKAT's other judgment enforcement efforts questions regarding Florida's homestead exemption as well as discovery disputes likely unique

---

2.   The defendants in the Florida Case are the 470 South Ocean Boulevard Trust and Jonathan E. Gopman, as trustee for the trust.

3.   *See, e.g.*, *LaMarca v. Jansen* (*In re Bifani*), 580 F. App'x 740 (11th Cir. 2014).

4.   Based on the discovery received to date, SKAT intends to seek leave to file an amended complaint, which SKAT anticipates will narrow the issues presented.

5.   Defendants filed one of their motions for a protective order a day before the Florida Court's second discovery ruling.  (ECF No. 72.)  Although the Florida Court never addressed that motion other than denying it as moot in its decision to transfer, SKAT contends that the Florida Court's second discovery ruling dispels with the arguments raised by defendants therein.  (ECF No. 73.)

to the purchase of the property.  SKAT proposes that the parties meet and confer and jointly propose a case management plan.

*The Long Island Case*

On July 11, 2024, SKAT commenced the Long Island Case in the United States District Court for the Eastern District of New York (the "Long Island Court").  (ECF No. 1.)  SKAT's fraudulent transfer claims in the Long Island Case stem from McGee's funneling of approximately $1,500,500 into defendant 99 Cross LLC during the Danish fraud.  After transferring the funds, McGee directed 99 Cross to purchase a 5,475 square foot Hamptons mansion located in Amagansett, New York, for a total of $3,500,500.  Like in the Florida Case, SKAT seeks to satisfy its judgment against McGee by unwinding McGee's transfer to 99 Cross.[6]

Following commencement of the Long Island Case, defendants filed a motion for a pre-motion conference regarding their anticipated motion to dismiss.  (ECF No. 16.)  At the pre-motion conference, and after the Florida Case was transferred to this Court, the parties stipulated to the transfer of the Long Island Case to this Court, which transfer occurred on March 17, 2025.  (ECF Nos. 21, 22.)

Unlike the Florida Case, SKAT's ability to satisfy its judgment against the Hamptons mansion may well be streamlined through the *Stein* judgment enforcement process.  SKAT contends that its judgment against McGee entitles it to the turnover of McGee's interest in 99 Cross (which, in turn, owns the Hamptons mansion).  To that end, in the interest of judicial economy, SKAT proposes staying the Long Island Case[7] and pursuing McGee's Hamptons mansion by way of judgment enforcement in *Stein*.

\* \* \*

SKAT is, of course, prepared to move forward as the Court sees fit and requests a conference to further discuss these cases.  SKAT's counsel is available for such a conference at the Court's convenience.

Respectfully submitted,

/s/  Marc Weinstein
Marc A. Weinstein

cc: all counsel of record (via ECF)

---

6.   The defendants in the Long Island Case are McGee and 99 Cross.

7.   SKAT seeks a stay rather than voluntary dismissal to preserve its rights.  To the extent SKAT is granted the relief it seeks by way of judgment enforcement, it will voluntarily dismiss the Long Island Case.